# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON FEBRUARY 1999 SESSION

| | | |
|---|---|---|
| LINDA JONES LEE, | ) | SHELBY JUVENILE |
| Petitioner/Appellant | ) | |
| | ) | Appeal No. 02A01-9805-JV-00133 |
| v. | ) | |
| | ) | **FILED** |
| VINCENT JEROME ASKEW, | ) | |
| | ) | March 17, 1999 |
| Respondent/Appellee | ) | Cecil Crowson, Jr. |
| | | Appellate Court Clerk |

## APPEAL FROM THE JUVENILE COURT OF SHELBY COUNTY
## AT MEMPHIS
## THE HONORABLE A. V. McDOWELL, JUDGE

**For the Appellant:**
Edward B. Johnson
Sloan, Rubens & Peeples
P. O. Box 768
West Memphis, AR 72303

**For the Appellee:**
Daniel Loyd Taylor
John N. Bean
100 North Main
Suite 2400
Memphis, TN 38103

**MODIFIED**

**WILLIAM H. INMAN, Senior Judge**

**CONCUR:**

**W. FRANK CRAWFORD, JUDGE**

**DAVID R. FARMER, JUDGE**

The issue in this case is the amount of child support that the acknowledged father, the appellee, a professional basketball player, should pay for the support of his son who was born out of wedlock on January 9, 1986.

We need not recite the proceedings before November 14, 1996, the date of a hearing before the Referee who found that the financial circumstances of the appellee had significantly increased. His gross income with the National Basketball Association for the 1995 - 96 season was $1,750,000.00, increased to two million dollars for the 1996 - 97 season. The Referee recommended that the child support be increased to $1,512.00 monthly,[1] beginning January 15, 1996. It was further recommended that a

> "guardianship in the Probate Court be opened to receive $118,156.00 on February 15, 1996 and $138,732.00 on November 1, 1996, . . . to be used for the support and maintenance of the child as may be necessary from time to time especially in the event that Mr. Askew's future income should diminish."

Medical insurance was also recommended.

On April 3, 1997, the case was heard by a special judge of the Juvenile Court, who found that the appellee had paid $256,888.00 into the Treasury of the Probate Court as recommended by the Referee and ordered that these funds be invested as the law requires and made available for the expenses of the child during his minority and for monthly support in the event the appellee's income diminished. It was further ordered that the fund may be used for college expenses, but in the event the child did not attend college or did not complete his education within a reasonable time, the balance would be returned to the appellee.

The monthly support obligation of $1,512.00 was affirmed.

---

[1]From $210.00, which was paid irregularly.

Thereafter, on July 2, 1998, the Court approved the reimbursement to the appellant of $1,958.00 for certain expenses she had incurred, and a further reimbursement of $3,000.00 for a computer, to be paid from the fund, and awarded the appellant her attorney fees of $5,428.54 to be paid from the income generated by the fund, which was to be administered by the Probate Court.

The plaintiff appeals, and presents for review the issues of (1) whether the monthly award of support in the amount of $1,512.00 was in conformity with the support guidelines, (2) whether the agreement of the defendant to pay the expenses of a private school should have been incorporated in the judgment, (3) whether the court erred in ordering any undistributed balance in the fund returned to the defendant, and (4) whether the plaintiff's attorney fees should have been ordered paid from the fund.

The appellee presents for review the issues of (1) whether he was properly ordered to pay the monthly support retroactive to May 19, 1995, (2) whether the Court "erred in ordering that the guardianship fund be available to pay the child's college tuition when such an order, under the authority of the child support guidelines, violates Mr. Askew's constitutional rights, (3) whether the Court erred in ordering the administration of the guardianship fund by the Probate Court, and (4) whether the court erred in awarding all attorney fees incurred by the plaintiff when she was not successful on all issues.

Our review of the findings of fact made by the trial Court is *de novo* upon the record of the trial Court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. R. APP. P., RULE 13(d); *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26 (Tenn. 1996).

Once the parent's income has been determined, the guidelines require the courts to calculate the required amount of support using the percentages provided

3

in the guidelines. See Tenn. Comp. R. & Regs. r. 1240-2-4-.03(5). In most circumstances, the result of these calculations becomes the obligor parent's child support obligation. However, a court may deviate from the guidelines if it makes detailed, written findings explaining why the application of the guidelines would be inappropriate and how deviating from the guidelines would be in the child's best interests. See Tenn. Comp. R. & Regs. r.1240-2-4-.02(7) (1994).

One ground for deviation specifically recognized in the guidelines involves wealthy parents whose net monthly income exceeds $6,250.00. On the occasions when the trial court calculated Mr. Askew's child support obligation, Tenn. Comp. R. & Regs. r. 1240-2-4-.04(3) provided that in the case of wealthy parents, the court must order the child support based on the appropriate percentage of all the obligor parent's net income but that it may fashion alternative payment arrangements for the child support derived from the portion of the net income that exceeds $6,250.00 per month.[2] The guidelines, like *Nash v. Mulle,* 846 S.W.2d 803, 806 (Tenn. 1993), also provide that permissible alternative payment arrangements may include educational or other trust funds for the benefit of the children.

The amount of child support required by the guidelines is presumptively correct. See Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7) (1994). Mr. Askew's support obligation is consistent with the guidelines.

# I

Appellant argues that an upward deviation from the guidelines is justified because of the high-income status of the appellee, who thereby enjoys a high standard of living which his child should share, *See, Nash, supra,* and the custodial

---

[2]The DHS increased the $6,250.00 ceiling to $10,000.00 effective October 5, 1997.

parent is not required to prove a specific need to justify an award beyond $1,512.00.00.[3] The trial judge, with the aid of counsel, considered the issue of an upward deviation at length, and concluded that none was justified. We cannot find that this conclusion was either an abuse of discretion or contrary to the preponderance of the evidence.[4]

**II**

The appellee is agreeable to the modifications of the judgment requiring him to pay the private school expenses of his child during enrollment and maintenance of passing grades.

**III**

The issue of the disposition of any remaining trust assets was not addressed in *Nash*. The appellant argues that the remainder should be available to the child for the establishment of an entrepreneurial enterprise upon attainment of majority, or for those purposes after college. The appellee argues that the trust assets are his property, and unless expended on behalf of the child, these assets should be returned to him. We agree. The funds are his, and the Court has no authority to advance a perceived inheritance to a child or confiscate a parent's assets on behalf of a child.

**IV**

The appellant's attorney fees were ordered to be paid from the entrusted funds, rather than by the defendant personally. It is the appellant who complains of this action. Considering the peculiar circumstances, and the amount of the entrusted funds, of which the appellee does not complain, we see no abuse of discretion.

---

[3]Which included the clerk's commission, plus an amount for non-visitation.

[4]Appellant is gainfully employed by United Parcel. She has one other child.

## V

The modification was ordered retroactively to become effective on May 18, 1995, the date of the filing of the petition. In light of the fact that the defendant's income for 1995 was $1,750,000.00, we are unable to find that the judgment preponderates against this order.

## VI

The appellee argues that the trust fund,[5] to pay for the child's college education, is violative of his constitutional rights. This issue was addressed in *Nash,* which the appellee assails with much vigor. We doubt that the Legislature was aware of the fact that the support guidelines it adopted would be interpreted to authorize a court to create a trust fund in the manner explicated in *Nash,*[6] but the point is wasted here. The holding in *Nash* is binding until modified by judicial or legislative action.

The Supreme Court held in *Nash* that the creation of a trust to meet the college needs of children of wealthy noncustodial parents is appropriate under state law for the protection of illegitimate children, as well as the lawful policy under the guidelines to place a child born out of wedlock in a status similar to that of children born in intact families. It was held that the power to create an educational trust to include college expenses does not intrude significantly upon parental rights and is justified by the state's interest in preventing substantial danger of harm to the welfare of the child:

> We believe that an approach that refuses to recognize the laudable goal of post-secondary education and instead provides only for the child's immediate needs, would not be a responsible approach. If the most concerned, caring parents do not operate in such a haphazard

---

[5]Sometimes referred to by the parties as a guardianship fund.

[6]A "college education" is not defined. The child may opt for vocation training, or for an 8-year professional degree. The possibilities are too numerous to speculate about.

way, surely the courts cannot be expected to award support in such a fashion. Thus, we conclude that establishing a program of savings for a college education is a proper element of child support when, as in this case, the resources of the non-custodial parent can provide the necessary funds without hardship to the parent.

The appellee argues that the support guidelines endanger his fundamental right to privacy in providing for the post-majority support of his child as he sees fit, and that *Nash* goes too far. As we have observed, this question is properly addressable elsewhere.

## VII

The appellee argues that the Court erred in ordering that the guardianship fund should be administered by the Probate Court, and that a guardian ad litem should be appointed to oversee funds disbursements with investments to be managed by a fund manager. Appellee argues that the ordered arrangement is too cumbersome and will prove to be too costly, superimposed upon the fact that a private manager will be able to obtain a greater return.

While resort to the Probate Court was somewhat unusual, we find nothing inherently disadvantageous about the order. The corpus will be protected and invested in accordance with statutory requirements, and will not be invaded without notice to the appellee, followed by a specific finding of need and justification. The income will be expended solely for the child's college expenses,[7] and will be subject to close and reasonable scrutiny of the Probate Court, which should keep the appellee reasonably and timely informed of the amount of and reason for all disbursements.

---

[7]The monthly support allocation ordinarily includes the expenses of a child through his high school years.

Finally, the appellee argues that the award of attorney fees was excessive in light of the fact that the appellant was unsuccessful on some issues. We find no abuse of discretion in the award of these fees. As modified, the judgment is affirmed with costs assessed to the parties evenly. The case is remanded for all appropriate purposes.

_____
William H. Inman, Senior Judge

CONCUR:


_____
W. Frank Crawford, Judge


_____
David R. Farmer, Judge